**SMITH | VILLAZOR**

Smith Villazor LLP
250 West 55th Street, 30th Floor
New York, NY 10019
www.smithvillazor.com

**RODNEY VILLAZOR**
T  212 582 4400
D  212 377 0852
rodney.villazor@smithvillazor.com

March 20, 2020

**VIA ECF and E-MAIL**
Honorable Claire C. Cecchi
United States District Court
District of New Jersey
Martin Luther King Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re:   *United States v. Matthew Goettsche, et al.*, 19-CR-877 (CCC)
      **Emergency Motion for Release**

Dear Judge Cecchi:

Please accept this letter in lieu of a more formal motion on behalf of Defendant Matthew Goettsche. We move on an emergency basis for the release of Mr. Goettsche from pretrial detention and respectfully ask the Court to schedule a telephone conference on this motion as soon as is practical.[1] This Court should release Mr. Goettsche pursuant to 18 U.S.C. § 3142(i)(4), on the conditions previously approved by U.S. Pretrial Services,[2] because of the compelling circumstances presented by the deadly nature of COVID-19 and Mr. Goettsche's unique status compared to other pretrial detainees.[3] Mr. Goettsche has no criminal record, he stands accused of a non-violent, financial crime, and at the detention hearing on February 13–14, 2020, Judge Hammer found Mr. Goettsche presents a risk of flight, but did not find that Mr. Goettsche had an inclination or proclivity to flee. Moreover, Mr. Goettsche has not been detained on an allegation that he is a danger to the community, and he has not been found to be such. Accordingly, as a detainee on risk of flight grounds only, Mr. Goettsche represents a very small percentage of the community of detained defendants. In addition, because Magistrate Judge Michael A. Hammer found no evidence of a proclivity to flee (as opposed to merely

---

[1] At such a hearing, the defense would waive Mr. Goettsche's presence for efficiency and speed, and to protect the safety of the attorneys, U.S. Pretrial, U.S. Marshals, and Court personnel. *See* Fed. R. Crim. P. 43.

[2] *See* Ex. A (redacted e-mail from U.S. Pretrial Services dated Feb. 12, 2020).

[3] On March 17, 2020, we sent a letter to the government raising these serious health concerns at the jail and requesting that they reconsider their position on bail, but the government did not respond.

having the means to flee), Mr. Goettsche represents an even smaller percentage of the overall population of detainees.

In his February 14, 2020 opinion issued on the record, Judge Hammer detained Mr. Goettsche "solely on risk of flight." *See* Tr. of Bail Hr'g 161:10–14, Dkt. No. 57. Judge Hammer based his opinion on Mr. Goettsche's "financial resources" and the "likelihood that Mr. Goettsche has other significant assets that he would be able to access either directly or through others to fund a risk of flight." Tr. of Bail Hr'g 149:5–13, ECF. No. 57. Notably, Judge Hammer did not find that Mr. Goettsche had a proclivity to flee. *See generally* Dkt. No. 57. And he said that "if at any point counsel believes that their access to Mr. Goettsche is unduly limited, they may raise that with either myself or, I imagine, Judge Cecchi." Tr. of Bail Hr'g 162:10–13, Dkt. No. 57. While Mr. Goettsche intends to file a full appeal of the grounds for the detention order issued by Judge Hammer on February 14, 2020, and reserves his right to do so, the instant emergency motion is narrowly focused on the dangers and constitutional issues presented by COVID-19, and recent events that make it even less likely that Mr. Goettsche presents a risk of flight.

**I.      Mr. Goettsche Should Be Released Pursuant to 18 U.S.C. § 3142(i)**

The Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Both grounds apply here. The circumstances presented by COVID-19, which include significant and unnecessary risks to Mr. Goettsche's health and safety and impediments to Mr. Goettsche's ability to meet with counsel, are a "compelling reason" to release Mr. Goettsche.

Other courts have already released pre-trial detainees due to the virus. For example, yesterday, in the Southern District of New York, U.S. District Judge Alison J. Nathan granted the defendant's emergency motion for pretrial release based, in part, on "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic." *United States v. Stephens*, No. 15-CR-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020). Despite the defendant having been charged with possession of a loaded firearm in proximity to drugs while on supervised release, having a criminal history, and having initially been found to be a danger to the community, Judge Nathan released him into 24-hour home confinement, finding that the COVID-19 public health crisis was a "compelling reason under 3142(i)" necessitating pretrial release. The court specifically noted "the obstacles the current public health crisis poses to the preparation of the . . . defense" and the fact that the more people crowded into a detention facility, the more dangerous it is for the community overall. *Id. at *2-3* (citing *United States v. Raihan*, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12–19 (E.D.N.Y. Mar. 12, 2020) (continuing defendant on pretrial release rather remanding him to the Metropolitan Detention Center due in part to the Magistrate Judge's recognition that "[t]he more people we crowd into that facility, the more we're increasing the risk to the community")).

Hon. Claire C. Cecchi
March 20, 2020
Page Three

## II.     The Impact of COVID-19 on Mr. Goettsche's Health and Right to Counsel

COVID-19 poses two threats to Mr. Goettsche's constitutional rights: (1) Mr. Goettsche's health and safety is particularly at risk while incarcerated, and (2) his ability to meet with counsel is severely limited and will likely soon be impossible.

### A.  Mr. Goettsche's Health and Safety

The World Health Organization has classified COVID-19 as a pandemic. Both the federal and New Jersey governments have declared a state of emergency, and the total confirmed COVID-19 cases in New Jersey spiked from 178 to 890 cases in the past three days.[4] Eleven people in New Jersey have died. In neighboring New York, the number of confirmed cases went from 44 on March 6, 2020, to 2,382 on March 18, 2020, and as of right now, that number is 7,102 with 35 deaths.[5] The Center for Disease Control and Prevention (CDC) urges that every person stay at least 6 feet from other people, wash their hands or use hand sanitizer regularly, and maintain a clean environment.[6]

While the harsh realities of COVID-19 affect the world at large, the risks presented by the virus are particularly acute for inmates. Conditions of pretrial confinement have proven time and time again to create the ideal environment for the transmission of contagious disease.[7] Inmates cycle in and out of pretrial facilities from all over the world, and people who work in the facilities leave and return daily without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in pretrial detention centers.[8]

In an open letter to Vice President Pence, public health experts explained that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," which means

---

[4] *See* NJ Health, *NJ COVID-19 Dashboard*, (last visited March 20, 2020), https://www.nj.gov/health/cd/topics/covid2019_dashboard.shtml (up to date statistics in New Jersey).

[5] Mitch Smith, *et al.*, *Coronavirus Map: U.S. Cases Surpass 15,000*, N.Y. Times, (last visited Mar. 20, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

[6] *How to Protect Yourself,* (last visited March 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html

[7] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *at* https://doi.org/10.1086/521910 (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise").

[8] Laura M. Maruschak et al., U.S. Dep't of Just., Bureau of Just. Stat., *Medical Problems of State and Federal Prisoners and Jail Inmates*, 2011-12 (rev. Oct. 2016), https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

Hon. Claire C. Cecchi
March 20, 2020
Page Four

"infection control is challenging in these settings."[9] Medical experts are urgently calling for the release of non-violent incarcerated individuals not only for the safety of the inmates, but for the rest of the country as well: "The abrupt onset of severe covid-19 infections among incarcerated individuals will require mass transfers to local hospitals for intensive medical and ventilator care — highly expensive interventions that may soon be in very short supply. Each severely ill patient coming from corrections who occupies an ICU bed will mean others may die for inability to obtain care."[10]

The Essex County Department of Corrections (DOC) houses over 2,400 inmates[11] and employs numerous people within its walls. New York City public defenders report that "the conditions at the Essex correctional facility 'have deteriorated to such an extent' that an entire unit has launched a hunger strike and is demanding Immigration and Customs Enforcement (ICE) officials release them."[12] The New York State correctional facility at Rikers Island has already had its first inmate test positive for COVID-19 after a prison guard tested positive,[13] while Santa Clara County has put two jail inmates in quarantine who were visited by an attorney who had tested positive for COVID-19.[14] It is not a matter of "if," but "when" the DOC has its own COVID-19 outbreak. Once the virus is introduced, it will be nearly impossible to stop its spread.

Senators, law enforcement and the defense bar nationwide have taken proactive measures to address the significant and inevitable impact on correctional facilities. Senator Kamala Harris wrote to the Director of the Federal Bureau of Prisons calling for the BOP to "tak[e] reasonable steps to reduce the incarcerated population."[15] Senator Jerrold Nadler and Representative Karen Bass wrote a joint letter to Attorney General Barr saying "it is incontrovertible that, if the [DOJ]

---

[9] Letter, Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States (March 2, 2020), https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf.

[10] Josiah Rich, *et al., We Must Release Prisoners to Lessen the Spread of* Coronavirus, The Washington Post, (Mar. 17, 2020), https://www.washingtonpost.com/opinions/2020/03/17/we-must-release-prisoners-lessen-spread-coronavirus/.

[11] New Jersey Jail Population Analysis, (Mar. 2013), https://www.drugpolicy.org/sites/default/files/New_Jersey_Jail_Population_Analysis_March_2013.pdf.

[12] *See* Joe Atmonavage, *ICE detainees go on hunger strike in N.J amid coronavirus fears, lawyers say*, (March 19, 2020) https://www.nj.com/coronavirus/2020/03/we-would-rather-die-on-the-outside-than-in-here-ice-detainees-go-on-hunger-strike-in-nj-amid-coronavirus-fears-lawyers-say.html

[13] *See* Chelsia Rose Marcius, *Rikers Island Inmate Has Contracted Coronavirus: Officials*, NY Daily News, (Mar. 18, 2020), https://www.nydailynews.com/coronavirus/ny-coronavirus-rikers-island-inmate-tests-positive-20200318-gf3r7q4cefaxzlqmwrmuevzz3y-story.html.

[14] Robert Salonga, Coronavirus: Inmates quarantined at Santa Clara County jail after defense attorney tests positive, (Mar. 13, 2020) https://www.mercurynews.com/2020/03/13/coronavirus-inmates-quarantined-at-santa-clara-county-jail-after-defense-attorney-tests-positive/

[15] *See* Kamala Harris, (Mar. 19, 2020), https://www.harris.senate.gov/imo/media/doc/Harris%20Letter%20to%20Carvajal%20(3.19).pdf.

does not act aggressively to address the COVID-19 threat, federal jails and prisons could quickly become epicenters of the COVID-19 pandemic" and calling for "prisoners who can and should be released" to be "released forthwith" and for the BOP to take "baseline public health measures," which they have not done so far.[16]

In an inspiring joint statement organized by Fair and Just Prosecution, 33 elected state prosecutors recognized their "obligation to protect the safety and wellbeing of *everyone* … [and those] obligations extend behind prison walls."  The statement acknowledged that "an outbreak of the coronavirus in these custodial facilities would not only move fast, it would be potentially catastrophic."[17]  They explicitly advocated for the reduction in detention for those who do not pose an immediate physical threat to the community.[18]  The Los Angeles Sheriff's Department recently released about 600 inmates, and Cuyahoga County in Ohio has likewise released hundreds.[19]  Mecklenberg County in North Carolina is releasing about four dozen inmates.[20]

The risk to Mr. Goettsche's health and safety grows with each day that he remains incarcerated at the DOC.  He should be released – even if it must only be temporary – so that he may be able to quarantine himself with his family in Colorado (which has only 277 confirmed cases, a substantially lower incidence of the virus than the New York metro area) and protect himself from the far greater likelihood that he contract COVID-19 in jail and have to wait in line for a hospital bed in New Jersey or New York that could be used for someone else.  As discussed in the sources cited above, releasing inmates such as Mr. Goettsche, who pose no threat whatsoever to the community and who have not even been found to have an inclination to flee, is also safer for the incarcerated population in general.

> B.  The DOC's Response to COVID-19 Will Prevent Mr. Goettsche from Meeting with Counsel

In his February 14, 2020 opinion, Judge Hammer instructed that "if at any point counsel believes that their access to Mr. Goettsche is unduly limited, they may raise that with either myself or, I imagine, Judge Cecchi."  Tr. of Bail Hr'g 162:10–13, Dkt. No. 57.  The circumstances presented by COVID-19 justify a concern that counsel will have no access to Mr. Goettsche in the coming days.

---

[16] *See* Jerrold Nadler, *et al.,* (Mar. 19, 2020),  https://judiciary.house.gov/uploadedfiles/2020-03-19_letter_to_ag_barr_re_covid19.pdf.

[17] *See* Joint Statement from Elected Prosecutors on COVID-19 and Addressing the Rights and Needs of Those in Custody, (Updated Mar. 18, 2020)*,* https://fairandjustprosecution.org/wp-content/uploads/2020/03/Coronavirus-Sign-On-Letter.pdf.

[18] *Id.*

[19] *See* US Jails Begin Releasing Prisoners to Stem COVID-19 Infections, BBC News, (Mar. 19, 2020) https://www.bbc.com/news/world-us-canada-51947802.

[20] *See* Michael Gordon, *et al.,* Mecklenburg Begins Releasing Jai Inmates to Avoid Cellblock Outbreak of COVID-19, (Mar. 18, 2020), https://www.charlotteobserver.com/news/coronavirus/article241279836.html.

      The Federal Bureau of Prisons has already banned attorney visits for the next 30 days.[21] The DOC may well decide to follow its lead. It has already promulgated new attorney visiting guidelines that severely limit attorney visits, placing complete discretion in the facilities' guards to decide whether to allow an attorney contact visit on a "case-by-case basis," after the attorney "communicate[s] the need and reason for the contact visit to the Visit Sergeant." *See* Ex. B Essex County Correctional Facility Visitation and Attorney Visits Due to COVID-19. This means we will only learn whether we can or cannot have a contact visit with Mr. Goettsche on site, upon physically appearing at the DOC.

      Not only are attorney contact visits subject to curtailment, but the DOC's COVID-19 policy does little to protect the health of inmates and attorneys. An attorney must go through a medical screening whereby an in-ear temperature reading of 100.4 degrees warrants further screening. *See id.* This minimal precautionary measure ignores evidence that a substantial subsection of infected population is contagious while being asymptomatic or mildly symptomatic.[22] The facility also prevents counsel from bringing in hand sanitizer or other cautionary measures that would facilitate a safe and healthy visit. For example, after days of consideration this week, the DOC allowed the undersigned an attorney contact visit in the confined visit room but denied my request to bring hand sanitizer and disinfectant wipes.

      As the Court knows, there is a substantial volume of electronic discovery that has been produced and more is on the way. We had previously raised the impracticalities of discovery review at the jail and do so again here, with renewed urgency. The only practical way for Mr. Goettsche to review discovery and meaningfully assist in his own defense is to view discovery on a laptop with counsel by his side within the cramped confines of the attorney visit room.

      As a result of the current environment, defense counsel and Mr. Goettsche are forced into a Hobson's choice: (a) ignore CDC-recommended protocols and meet in close quarters at the Essex County detention facility to review discovery, or (b) forego Mr. Goettsche's Sixth Amendment rights to a speedy and public trial, and wait indefinitely for the spread of COVID-19 to sufficiently dissipate. We respectfully ask you to not force us to make such a choice, and to release Mr. Goettsche. Mr. Goettsche agrees to tolling of the Speedy Trial Act for any period of time he is outside of incarceration.

---

[21] Federal Bureau of Prisons COVID-19 Action Plan, (Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp ("As such, while in general, legal visits will be suspended for 30 days, case-by-case accommodation will be accomplished at the local level and confidential legal calls will be allowed in order to ensure inmates maintain access to counsel.").

[22] Elizabeth Cohen, *Infected people without symptoms might be driving the spread of coronavirus more than we realized*, CNN (March 19, 2020), https://www.cnn.com/2020/03/14/health/coronavirus-asymptomatic-spread/index.html

Hon. Claire C. Cecchi
March 20, 2020
Page Seven

### III. Mr. Goettsche Presents No Risk of Flight in the Current Environment and the Release Conditions Proposed by Pretrial Services Before the Virus Will More than Reasonably Assure His Appearance

In addition to the arguments raised in our Motion for Revocation of Detention Order as to why Mr. Goettsche does not present a risk of flight (Dkt. No. 36), the onset of COVID-19 presents additional circumstances that show that Mr. Goettsche is not a flight risk despite his financial means. The Department of State has issued a "Global Level 4 Health Advisory – Do Not Travel" notice, advising all U.S. Citizens not to travel internationally.[23] The U.S. land borders with Canada and Mexico are closed to all non-essential travel.[24] Commercial air travel has been severely restricted, and there is a complete shutdown of many other countries' borders. In this environment, it is even less likely – or even feasible – that Mr. Goettsche would flee the United States.

Moreover, during release, Mr. Goettsche would not be left to his own devices, but will be supported and monitored by Pretrial Services under home confinement with a GPS monitor and custodians who were previously approved by Judge Hammer. *See* Tr. of Bail Hr'g 158:14–23, Dkt. No. 57. His home in Colorado, where he, his wife and three young children have lived their entire lives, is nowhere near a land border. Since 2009, Pretrial Services' data has found that only 2.9% of defendants in the highest risk category were re-arrested for a violent crime while on release.[25]

We are mindful that the Court must weigh the potential precedent that releasing Mr. Goettsche may have for other detained defendants awaiting trial. The granting of this motion does not lead inexorably to a wholesale release of all pretrial detainees. Those detained for being a danger to community, unlike Mr. Goettsche, unquestionably present more risk to the public such that reconsideration may be unwarranted. However, Mr. Goettsche was detained based only on him having the financial means to flee if he were so inclined, with no finding that he has any inclination or proclivity to flee and has no criminal record. He is accused of a non-violent, financial crime. The government has his passport, and his family would surrender their passports as part of the Pretrial Services recommended precondition to release. When the Court weighs the health risks to Mr. Goettsche and the other future hospital patients that would be impacted by an all but certain jail virus outbreak against the minimal risk that Mr. Goettsche will flee, despite the GPS monitor, lack of passport, and global barriers to travel, the balance weighs heavily in favor of immediate release.

---

[23] Global Level 4 Health Advisory – Do Not Travel, (Mar. 19, 2020), https://travel.state.gov/content/travel/en/traveladvisories/ea/travel-advisory-alert-global-level-4-health-advisory-issue.html#.XnPHGUBrXPM.twitter

[24] *Corona Virus Travel Restrictions, Across the Globe*, N.Y. Times (last visited March 20, 2020), https://www.nytimes.com/article/coronavirus-travel-restrictions.html

[25] Thomas H. Cohen, Christopher T. Lowenkamp, and William E. Hicks, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary* (September 2018) *at* https://www.uscourts.gov/sites/default/files/82_2_3_0.pdf.

Hon. Claire C. Cecchi
March 20, 2020
Page Eight

      Accordingly, Mr. Goettsche respectfully and urgently moves the Court for his release on the conditions proposed by Pretrial Services and any other conditions required by the Court.

Respectfully submitted,

Rodney Villazor, Esq.

cc:    Andrew Lourie, Esq.
        Benjamin Sauter, Esq.
        Hartley West, Esq.
        Amanda Tuminelli, Esq.
        Defense counsel of record (via ECF)
        Government counsel of record (via ECF and e-mail)
        U.S. Pretrial Services Officer Kristen McKeown (via e-mail)